NORTHWEST JUSTICE PROJECT
John Wolff, WSBA # 56829
745 N. Grand Ave., Suite 101
Pullman, WA 99163
Email: john.wolff@nwjustice.org
Tel. (509) 381-2355
Fax (206) 260-8931

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN PARKE, SCOTT DARRINGTON, NANCY CASKEY, and TAMARA APFELBECK; and ELVES FOR THE HOMELESS, a Washington non-profit corporation.<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF CLARKSTON, a municipal corporation.<br><br>Defendant. | No. 2:24-cv-112<br><br>COMPLAINT AND JURY DEMAND |

COMPLAINT - 1

*It's inhumane, anyone who has to live with that restriction would understand that. It's not intended to allow us to exist in this City, it's intended to criminalize us for existing.*

-John Parke

*I also need shelter during the day, it rains during the day, not just at night.*

-Tiffany Ann Deen

*I just want secure housing again so I can get my son back living with me.*

-Tamara Apfelbeck

*I only have five years left on my heart, my family is buried here. I moved back here to live here, this is where I'm supposed to die.*

-Scott Darrington

*They want us to just sit in the rain waiting around for 9 PM to set up our tents, getting soaked. Humans needs shelter during day, too.*

-Nancy Caskey

*The City has never offered me shelter as long as I've been homeless here. If they did, I'd take it, I'm tired of living in a tent.*

-Matthew Doffing

*Maybe I can camp in the mayor's yard, or find an abandoned house*

COMPLAINT - 2

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

*or something.*

     -Aaron Treharne

*I'd love to have my own place with my own bed, a quiet place.  I've never been offered any kind of shelter by the City.  The only thing they've done is offer to buy me a bus ticket somewhere else.*

     -Dylan Evenson

*If there was a way to snap my fingers and send them to Seattle, I would.*

     -Dave Vinton, Clarkston City Councilmember, commenting on the City's unhoused residents during a City Council meeting on February 26, 2024

## INTRODUCTION

On February 6, 2024, the City of Clarkston declared a state of emergency. The emergency was that as many as seventy-five of the City's residents were without housing in the winter and the City had no shelter available.  But rather than the state of emergency being called to protect the City's most vulnerable citizens during winter, it was instead called to hurriedly pass an ordinance which made it as difficult as possible for those citizens to exist within City limits.

Ordinance 1706 prohibits, among other things, erecting a tent or other shelter outside the hours of 9:00 pm to 7:00 am or possessing items other than those essential to living; limits any one person or family's total space to an 8x8'

COMPLAINT - 3

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

plot; and designates a single small city park as the only public space in which a shelter may be erected.  The Ordinance further prohibits unattended belongings, and authorizes city police to seize unattended property as abandoned.  A violation of Ordinance 1706 carries a punishment of ninety days in jail, a $1,000 fine, and a six-month exclusion order.

In practical effect, the Ordinance forces the City's unhoused residents to migrate every single day, with all their belongings including tents, propane heaters, and other life sustaining property, lest their belongings be seized as abandoned property, to whatever shelter they can find between the hours of 7:00 am and 9:00 pm.  Anyone unable to migrate, whether due to disability or some other reason, must sit in the park, where they are prohibited from erecting any kind of shelter regardless of weather.  At 9:00 pm, those who migrated may return to the park to set up their tents in the dark.  Then before 7:00 am, every single day, they must have all of their belongings neatly packed, and do it all over.  Anyone who violates the Ordinance, no matter how technical the violation, is subject to a banishment order from the City.

Plaintiffs bring this action against the City to assert their right to exist in the city they call home.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to

COMPLAINT - 4

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367, because the claims either arise under federal law or are so related to the federal law claims that they form part of the same case or controversy.

2.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.     Venue is proper under 28 U.S.C. § 1391 because the Plaintiffs either reside in, operate out of, or were injured by the acts complained of in Asotin County, Washington, and the Defendant is an incorporated municipality located in Asotin County, Washington.

## THE PARTIES

4.     John Parke is a 45-year old unhoused resident of Clarkston, Washington, where he has lived for most of his life.  John has advanced carpal tunnel syndrome in his hands and is diagnosed with borderline personality disorder, post-traumatic stress disorder, and manic depression.  He survives off cash assistance and is in the process of applying for disability income.

5.     Scott Darrington is a 47-year old unhoused resident of Clarkston, Washington, where he has lived on and off his entire life.  Scott has frostbite on his toes and doctors are considering amputation.  He was born without an upper ventricle in his heart and has severe heart disease. Walking just two blocks causes Scott extreme fatigue and his blood pressure to rise as high as 260/180.  His doctors have described him as a "walking stroke" and told him that he has less than

COMPLAINT - 5

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

1   five years to live.  He is also diagnosed with a random seizure disorder, arthritis, a

2   bad back, severe depression, post-traumatic stress disorder, and schizophrenia.  He

3   survives off $943.00 per month in disability income.

4       6.   Nancy Caskey is a 54-year-old unhoused resident of Clarkston,

5   Washington, where she has lived since September 2023.  She was previously a

6   resident of Moscow, Idaho.  Nancy is diagnosed with non-Hodgkin's lymphoma,

7   which has spread to her bone marrow and lymph nodes.  She takes medication to

8   slow the cancer's spread, but she will die from it at some point.  She is also

9   diagnosed with a bipolar manic disorder, borderline personality disorder, post-

10  traumatic stress disorder, and severe depression.  She survives off $934.00 per

11  month in disability income.

12      7.   Tamara Apfelbeck is a 39-year-old unhoused resident of Clarkston,

13  Washington, where she has lived since 2013.  She lost her home to a fire in

14  September 2023 and has been homeless ever since.  As a result of being homeless,

15  her son was temporarily removed from her care.  She is diagnosed with chronic

16  pulmonary disease, for which she takes medication.  She also has a tumor on her

17  uterus and post-traumatic stress disorder.  She has a part-time job where she earns

18  $16.42 per hour, and is attempting to save enough money to obtain housing and be

19  reunited with her son.

20      8.   Plaintiff Elves for the Homeless ("the Elves") is a volunteer-based

21  COMPLAINT - 6

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

501(c)(3) non-profit corporation duly organized under the laws of Washington and headquartered in Clarkston, Washington.  It brings this action as an organizational plaintiff on behalf of itself and its constituents, who are unhoused residents of Clarkston.  The Elves' mission is to serve the City's unhoused residents.  To accomplish the mission, the Elves provides warming and cooling centers, meals, essential items, and distributes information on resources available to unhoused persons.  Most recently, the Elves has concentrated its efforts on assisting unhoused residents with complying with the Ordinance.  Its mission has been substantially injured and frustrated by the Ordinance because it has made serving the City's unhoused residents significantly more difficult and cumbersome, particularly by driving many unhoused residents out of the City.  The Elves has spent resources dealing with the Ordinance which it otherwise would have put toward its core mission of providing aid to the City's unhoused residents.  Because it is volunteer-based, its resources are even more scarce than other groups with paid employees.

9.      Defendant City of Clarkston is a municipal corporation duly organized and existing under the laws of the State of Washington with the right to sue and be sued in its own name and for the acts and omissions of its agents and employees.

## ALLEGATIONS OF FACT

COMPLAINT - 7

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

10.     The City of Clarkston (the "City") is located in the southeastern corner of Washington, along the Snake River on the border with Idaho.  On the other side of the river sits the City of Lewiston, Idaho.  The two cities and surrounding area are known collectively as the Lewiston-Clarkston Valley ("the Valley.")

11.     The Valley, in what is a nationwide trend, is facing a housing crisis. Rising costs and a lack of affordable housing have resulted in less available housing than there are people.  As a result, many people in the Valley find themselves involuntarily unhoused, forced to take refuge in tents, vehicles, or whatever other shelter they can find.

12.     According to the U.S. Housing and Urban Development's 2023 Annual Homelessness Assessment Report to Congress, persons living with disabilities are amongst the most susceptible to being involuntarily unhoused.  U.S. DEPT. OF HOUS. AND URB. DEV., THE 2023 ANNUAL HOMELESS ASSESSMENT REPORT TO CONGRESS 78-79 (2023).  According to HUD's report, 31% of individuals experiencing homelessness in the United States reported experiencing chronic homelessness, a term that refers to individuals with a disability who have continuously experienced homelessness for one year or more, or have experienced at least four episodes of homelessness in the last three years where the combined length of time experiencing homelessness is at least 12

COMPLAINT - 8

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

months.  *Id.*, at 78.  This figure does not include unhoused persons who are disabled but not yet chronically homeless.

13.     People with disabilities are one of the most likely groups to experience homelessness and/or unable to afford housing. One reason for this is that persons with disabilities experience higher rates of poverty due to ableism and other structural barriers to employment and economic security.  Federal policies, including income and asset limits for SSI recipients and sub-minimum wages, make it hard for people with disabilities to escape poverty.

14.     Upon information and belief, a significant proportion of the unhoused residents living in the Valley, including Clarkston, are persons with disabilities.

15.     Unhoused people, and in particular unhoused women, are also at an increased risk of violent crime victimization.  Molly Meinbresse, et. al., Exploring the Experiences of Violence Among Individuals Who Are Homeless Using a Consumer-Led Approach, *Violence and Victims,* Volume 29, Number 1, 2014, 122-123.  As a result, people who are unhoused often group together to keep themselves safe.

16.     In Clarkston, one such group formed in the fall of 2023.  A group of a dozen or so unhoused people began sheltering in a small city park called Foster Park in early October 2023.  Plaintiffs John Parke, Scott Darrington, and Nancy Caskey were amongst this group.

COMPLAINT - 9

17.     The group was there a month or so before the City informed them that it was shutting Foster Park down for maintenance and restoration.  The City erected orange fencing around the park and closed the bathrooms.

18.     Upon information and belief, to date, the City has not performed any maintenance or restoration in Foster Park.

19.     The City also offered a second explanation for this park's closure, when it informed the group it was shutting Foster Park down because someone had died of a drug overdose in the bathroom.  Upon information and belief, the decedent was not part of the unhoused group sheltering in Foster Park or otherwise homeless.

20.     The City told the group it could move to another city park called Arnold Park.  The group moved to Arnold Park in late October or early November of 2023 and began prepping for winter by erecting more stable structures using tarps and other materials.

21.     In late November 2023, the City approached the group and told its members they had to leave Arnold Park, but that the City had an easement on a strip of land near Walmart that the group could use.  The City informed the group it would not provide any sanitation or sewer services to the group.

22.     After the group moved to the land near Walmart, in what became known as "Camp Town," some community members began donating tents, clothes,

COMPLAINT - 10

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

food, and other supplies critical to the group's welfare and survival. Community members also helped haul garbage from Camp Town using utility trailers.

23.    The City then installed concrete barriers at either end of Camp Town, making it difficult to approach the camp by vehicle to deliver goods and services or to load and haul garbage away. When the group at Camp Town asked the City why it installed the barriers, the City said it was to prevent people from driving aid into Camp Town.

24.    Upon information and belief, the City threatened and issued some community members with tickets for driving around the concrete barriers to provide aid to the unhoused residents sheltering at Camp Town.

25.    The City was, on the one hand, refusing to provide Camp Town with dumpsters, portable toilets, or other services, and on the other, making it more difficult for people in the community to provide those services voluntarily.

26.    Despite the City's actions or lack thereof, the group at Camp Town continued to cooperate and take care of each other.

27.    One community member took some of the group onto some land to cut enough firewood for everyone. Other group members collected spare tents and tarps so they could repair the broken tents of others. They collected propane heaters and coordinated food and supply drives. They checked on each other, helped each other get to doctor's appointments, and provided comfort for one

COMPLAINT - 11

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

1    another.

2        28.    As winter went on and snow accumulated, life at Camp Town became

3    more difficult.  Plaintiff Darrington got frost bite on his toes because he stayed up

4    during the night to knock snow off everyone's tents to keep them from collapsing.

5    His doctors are presently deciding whether the toes need to be amputated.

6        29.    Some community members targeted and harassed the people

7    sheltering at Camp Town.  The unhoused group routinely endured insults, racial

8    slurs, and death threats.  People shot fireworks at them.

9        30.    Upon information and belief, at some point in January 2024, the City

10    learned it did not have an easement on the property.

11        31.    The owner of the property, knowing there was no easement,

12    demanded the City trespass all unhoused residents from the property.

13        32.    On February 6, 2024, the City held an emergency city council

14    meeting.

15        33.    At the meeting, the City's mayor, Monika Lawrence, declared a state

16    of emergency.

17        34.    The state of emergency declared the City had "a long history of

18    serving the needs of its citizens, including the mentally ill, homeless, and addicted

19    individuals by providing multiple services such as food, shelter, and state

20    sponsored services."

21    COMPLAINT - 12

35.     The state of emergency also stated "the number of unhoused person [sic] in our community has risen drastically over the last year," "there is not enough housing in Clarkston to meet the needs of the unhoused in our community," and that due to the trespass notice the unhoused residents "will have no place to locate resulting in a civil emergency."

36.     Despite those statements, the state of emergency provided no plan to protect or provide for the City's unhoused citizens.  Instead, it authorized immediate removal of the unhoused residents from the land and deconstruction of Camp Town.

37.     At the same meeting, the City Council utilized emergency powers to pass Ordinance 1706.

38.     Ordinance 1706 contained a preamble which mirrored Mayor Lawrence's state of emergency.

39.     But again, despite those statements, Ordinance 1706 provided no plan to protect or provide for the City's unhoused residents.  Instead, it all but outlawed their existence.

40.     The Ordinance criminalized sheltering within the City except at designated public spaces between the hours of 9:00 pm to 7:00 am. It also limited shelter plots to 8x8' and prohibited possession of any items unnecessary to sustain life.

COMPLAINT - 13

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

41.    The Ordinance designated Foster Park as the sole public space available for sheltering.  To date, no other public area has been designated.

42.    The Ordinance further provided that any personal property left unattended in the park would be deemed abandoned and seized.

43.    A violation of the Ordinance is punishable by up to ninety days in jail, a $1,000 fine, and a six month order of exclusion.

44.    The City Council distributed maps to people who attended its February 6, 2024 meeting.  These maps had areas marked where the City Council directed people to shelter.

45.    None of the areas marked on these maps were City property.  Instead, the areas were owned by other entities.  Some were even across the river in Lewiston, in a different state.

46.    On February 7, 2024, under the authority of the Mayor's State of Emergency, city police distributed and posted notices of trespass to the individuals sheltering in Camp Town, giving them until 5:00 pm on February 12, 2024, to vacate Camp Town.

47.    On February 12, 2024, most if not all the people sheltering in Camp Town had vacated.

48.    Many of the individuals who vacated had to leave their belongings behind, such as tents, clothes, and other property.

COMPLAINT - 14

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

49.     Upon information and belief, city police destroyed all personal property left behind by either disposing of it or burning it.

50.     As a result of the notices of trespass and Ordinance 1706, individuals who formerly sheltered in Camp Town dispersed all over the surrounding areas.

51.     Many unhoused residents left the City entirely, forced to relocate to other cities, counties, and even states.

52.     Some unhoused residents moved across the river and into Lewiston, Idaho.

53.     Some unhoused residents attempted to go to the areas marked on the maps provided by the City.  However, when they went to those areas, the authorities who controlled those areas told the residents they could not shelter there.

54.     Others relocated to neighboring county parks where anyone is free to camp for up to fourteen days.  Plaintiffs Parke, Darrington, Caskey, and Apfelbeck were amongst the unhoused residents forced to relocate outside city limits into a neighboring county park.

55.     Others remained within the City and attempted to comply with the harsh requirements of the Ordinance.

56.     Access to critical care and services was substantially diminished for all the City's unhoused residents after the Ordinance was implemented.

COMPLAINT - 15

Healthcare, legal aid, social programs, and charitable aid have all been significantly more difficult to utilize since that time, and this is especially true for those unhoused persons in the City living with a disability.

57.    For instance, Plaintiffs Parke, Darrington, and Caskey had no ability to come into the City to access healthcare and prescription medication, meet with social workers, or even access a free meal offered by their church, while they were forced to live in another county.

58.    For others, the Ordinance made it more difficult to maintain stable employment or obtain housing.  For instance, Plaintiff Apfelbeck, who has a vehicle, was forced to drive approximately forty miles round trip for work.  When she was living in the City, she could walk to work.

59.    Since passing the Ordinance, the City has strictly enforced its terms. Upon information and belief, the City has charged at least eleven persons with trespass for technical violations, such as not having their shelter packed up by 7:00 am sharp, occupying a plot larger than 8x8', or possessing more property than allowed.

60.    Upon information and belief, the City has seized the personal belongings of multiple people, claiming those items either were abandoned, exceeded Ordinance limits, or had "no apparent utility" as determined by the City.

61.    Upon information and belief, the City's intended result in passing the

COMPLAINT - 16

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

Ordinance was to banish its unhoused residents by making it as difficult as possible for its unhoused residents to exist within the City.

62.     Upon information and belief, a substantial portion of the City's unhoused residents have left the area permanently as a result of the Ordinance.

63.     On March 7, 2024, the Individual Plaintiffs sent the City a letter requesting a reasonable modification under the Americans with Disabilities Act, requesting the City stop its enforcement of the Ordinance against the Plaintiffs based on their disabilities.

64.     To date, the City has not granted the Individual Plaintiffs' reasonable modification request.

65.     On or about April 3, 2024, the City posted a notice that Foster Park is closed every day from 8:00 AM to 12:00 PM for maintenance, and that any person who enters or remains within the park during those times is subject to prosecution for criminal trespass.

## CLAIMS FOR RELIEF

**First Claim for Relief: Deprivation of Federal Constitutional Right to Freedom of Travel**

66.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

67.     By adopting and enforcing laws, policies and customs that make it

COMPLAINT - 17

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

unlawful for homeless people to live in the City of Clarkston, the City has deprived the Individual Plaintiffs of their right to freedom of travel guaranteed by the Fourteen Amendment Due Process clause in violation of 42 U.S.C. § 1983.  The City has denied the Individual Plaintiffs' federal constitutional right *not* to travel to another city or state and *not* to live elsewhere.

**Second Claim for Relief: Deprivation of the Washington State Constitutional Right to Freedom of Travel, art. I, § 12**

68.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

69.    By adopting and enforcing laws, policies and customs that make it unlawful for homeless people to live in the City of Clarkston, the City has deprived the Individual Plaintiffs of their right to freedom of travel guaranteed by the Washington Constitution.  The City has denied the Individual Plaintiffs' state constitutional right *not* to travel to another city within Washington State and not to live elsewhere in Washington State.

**Third Claim for Relief: Deprivation of Rights Guaranteed by the Eighth Amendment by Imposing Cruel and Unusual Punishment**

70.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

71.    By adopting and enforcing laws, policies and customs that make it

COMPLAINT - 18

unlawful for involuntarily unhoused people to live in the City of Clarkston, punishable by prison, fines, and a six month exclusion order, the City has deprived the Individual Plaintiffs of their Eighth Amendment right to be free from cruel and unusual punishments and from excessive fines, contrary to 42 U.S.C. § 1983.

**Fourth Claim for Relief: Deprivation of Rights Guaranteed by Washington Constitution, art. 1, § 14 by Imposing Cruel Punishment**

72.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

73.    By adopting and enforcing laws, policies and customs that make it unlawful for involuntarily unhoused people to live in the City of Clarkston, punishable by prison, fines, and a six month exclusion order, the City has deprived the Individual Plaintiffs of their state constitutional right to be free from cruel punishments and excessive fines, contrary to Washington Constitution, article I, § 14.

**Fifth Claim For Relief: Deprivation of Due Process Guaranteed By the Fifth and Fourteenth Amendments by Subjecting Unhoused Persons to Seizure of Property Without Due Process**

74.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

75.    By adopting and enforcing laws, customs, and policies which allow

COMPLAINT - 19

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

the City to seize property without due process, the City has deprived the Individual Plaintiffs of their Fifth and Fourteenth Amendment right to due process before their property may be seized, contrary to 42 U.S.C. § 1983.

**Sixth Claim For Relief: Deprivation Of Due Process Guaranteed By The Washington Constitution, Article I, § 3 By Subjecting Unhoused Persons to Seizure of Property Without Due Process**

76.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

77.     By adopting and enforcing laws, customs, and policies, which allow the City to seize property without due process, the City has deprived the Individual Plaintiffs of their state constitutional right to due process before their property may be seized, contrary to Washington Constitution, article I, § 3.

**Seventh Claim for Relief: Violation of the Americans with Disabilities Act, 42 U.S.C. § 12132**

78.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

79.     The City of Clarkston is a public entity subject to Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131 *et seq*.

80.     Many unhoused residents of the City are individuals with disabilities.

81.     The Ordinance has a disproportionate impact on unhoused persons

COMPLAINT - 20

living with disabilities.  It has forced many unhoused persons living with disabilities to live outside the City, sometimes even in other counties, making it more difficult to access critical services, such as legal aid, healthcare, and public benefits.

82.     The Ordinance has also made it more difficult for unhoused persons with disabilities by denying them any stability.  Persons with physical or mental disabilities are forced to seek out shelter during the day and must carry all their belongings with them, or else risk their belongings being confiscated and destroyed by City officials.  They are likewise forced to set up their tent each night after 9:00 pm, in the dark and cold, sometimes in the rain, and break down their tent and be completely packed up by 7:00 am.  As a result of the Ordinance, their disabilities are exacerbated and they are preoccupied with merely surviving and not losing what few life-saving items they have rather than accessing critical care and services such as legal aid, healthcare, and public benefits.

83.     As a result of the Ordinance, unhoused persons with disabilities are at risk of suffering trauma or exacerbating mental health conditions, losing medications, missing doctor appointments, inability to access legal aid, losing accommodations to help them participate in and receive the benefit of both public and private programs and services, and outright banishment from the City.

84.     The Individual Plaintiffs submitted a reasonable modification request

COMPLAINT - 21

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

1    on March 7, 2024, which to date has not been granted.

2          85.    By the actions set forth above, the City has violated the ADA, 42

3    U.S.C. § 12131 *et seq.*, by, among other things:

4                a. Denying qualified individuals with disabilities the benefit of its

5    programs, services, or activities, 28 C.F.R. § 35.130(a);

6                b. Denying qualified individuals with disabilities an equal opportunity

7    to participate in or benefit from its programs, services, or activities, 28 C.F.R. §

8    35.130(b)(1)(ii);

9                c. Utilizing criteria or methods of administration that have the effect

10   of discrimination against qualified individuals with disabilities or that have the

11   purpose or effect of defeating or substantially impairing accomplishment of the

12   objectives of the City's program with respect to individuals with disabilities, 28

13   C.F.R. 35.130(b)(3)(i), (ii), (8);

14               d. Failing to make reasonable modifications in policies, practices, or

15   procedures when the modifications are necessary to avoid discrimination on the

16   basis of disability, 28 C.F.R. 35.130(b)(7)(i);

17               e. Failing to administer services, programs, and activities in the most

18   integrated setting appropriate to the needs of qualified individuals with disabilities,

19   28 C.F.R. § 35.130(d); and

20               f. Excluding or otherwise denying equal services, programs, or

21   COMPLAINT - 22

activities to an individual because of their relationship or association with a person with a disability, 28 C.F.R. § 35.130(g).

86. Defendant's discriminatory conduct as described above has caused injury to the Plaintiffs and individuals with disabilities and others associated with them.

87. Defendant's conduct described above was intentional, willful, reckless, deliberately indifferent to, and/or otherwise taken with disregard for the rights of individuals with disabilities and those associated with them.

**Eighth Claim for Relief: Declaratory Judgment**

88. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

89. For reasons including but not limited to those stated herein, an actual dispute exists between Plaintiffs and Defendant, the parties have genuine and opposing interests, the interests are direct and substantial, and judicial determination will be final and conclusive.

90. Plaintiffs are entitled to declaratory judgment that the Ordinance is unconstitutional and illegal, as well as other and further relief as may follow the entry of such a declaratory judgment.

**RELIEF REQUESTED**

COMPLAINT - 23

**Northwest Justice Project**
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931

1    Plaintiffs hereby request that the Court grant the following relief:

2    a)  Damages to the Individual Plaintiffs in an amount to be proven at trial;

3    b)  Injunctive relief prohibiting the Defendant City of Clarkston from

4    enforcing the Ordinance;

5    c)  Declaratory relief stating Defendant City of Clarkston's Ordinance is

6    unconstitutional as applied to the Plaintiffs;

7    d)  Declaratory relief stating Defendant City of Clarkston violated the

8    Plaintiffs' rights under the Americans with Disabilities Act;

9    e)  Plaintiffs be awarded their costs and attorney's fees as provided by 42

10    U.S.C. § 1988 and the ADA, and any other applicable provision of statutory and

11    common law;

12    f)  Exercise continuing jurisdiction during enforcement of its judgment;

13    g)  Award such other and further relief as may follow from the entry of a

14    declaratory judgment; and

15    h)  Award any further relief the Court deems just or equitable.

16    DATED this 5th of April, 2024.

17

18    NORTHWEST JUSTICE PROJECT

19     /s John Wolff

20    John Wolff, WSBA #56829
       Attorney for Plaintiffs
       745 Grand Ave., Suite 101

21    COMPLAINT - 24

Pullman, WA 99163
John.wolff@nwjustice.org
Tel. (509) 381-2355
Fax: (206) 260-8931

COMPLAINT - 25

Northwest Justice Project
745 Grand Ave. Suite 101
Pullman, WA 99163
Tel. (509) 381-2355
Fax. (206) 260-8931