FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 13, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN PARKE and ELVES FOR THE HOMELESS, a Washington non-profit corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CITY OF CLARKSTON, a municipal corporation.<br><br>                    Defendant. | NO. 2:24-CV-0112-TOR<br><br>ORDER ON DEFENDANT'S SUMMARY JUDGMENT |

BEFORE THE COURT are Defendant's Motion for Summary Judgment against John Parke (ECF No. 57), Defendant's Motion for Summary Judgment against Elves for the Homeless (ECF No. 61), Plaintiffs' Motion for Summary Judgment (ECF No. 71), and Defendant's Motion to Amend the Scheduling Order (ECF No. 97). The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's Motion for Summary Judgment against John Parke (ECF No. 57) is GRANTED, Defendant's Motion for

Summary Judgment against Elves for the Homeless (ECF No. 61) is GRANTED,

Plaintiffs' Motion for Summary Judgment (ECF No. 71) is DENIED and

Defendant's Motion to Amend the Scheduling Order is DENIED as moot.

## BACKGROUND

This case arises out of claims of violations of the Washington Constitution,

United States Constitution, Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12101-12213, and Washington Law against Discrimination ("WLAD"), RCW

49.60.010-.530. ECF Nos. 27 at 16-23; 36 at 17-24. Plaintiff alleges under the

U.S. Constitution and Washington Constitution for violations of the freedom of

interstate travel. ECF No. 36 at 17-34. The issue revolves around the City of

Clarkston's ("City") Ordinance No. 1706 that prohibits people from camping in the

City of Clarkston other than in Foster Park between the hours of 9:00 a.m. to 7:00

p.m. ECF No. 72 at 17.

On February 6, 2024, City adopted Ordinance No. 1706. ECF No. 72 at 17.

Ordinance No. 1706 prohibits people from camping on City property when there is

shelter available to the person. ECF No. 72 at 16. However, if shelter is not

available, then the person is permitted to camp on a designated City property but

only from the hours of 9:00 p.m. to 7:00 a.m. ECF No. 72 at 17. The City's

designated property is Foster Park. ECF No. 72 at 17. A violation of this

ordinance may result in an arrest and an order of exclusion for six months. ECF

No. 72 at 17.  Additionally, a conviction of a violation of Ordinance No. 1706 is punishable up to either ninety days in jail, a fine of $1,000.00, or both.  ECF No. at 17.

City adopted Ordinance No. 1709 on August 12, 2024.  ECF No. 72 at 25. This ordinance permits that anyone who is cited for a violation of a park ordinance may be issued a series of exclusions.  ECF No. 72 at 25.  For the first exclusion, an exclusion order for 10 days may be issued, 20 days for the second exclusion, 30 days for the third exclusion, and a year for any exclusion issued after that.  ECF No. 72 at 25.  Under Ordinance No. 1709, an exclusion order excludes the person cited from all City parks.  ECF No. 72 at 26.

Plaintiff John Parke ("Parke") is a partially disabled man who was facing homelessness between July 2024 to January 2025.  ECF No. 57 at 2.  During this time, Parke camped in Foster Park which is located in the city of Clarkston.  ECF No. 57 at 2.  Parke was cited twice in 2025 for failing to pack up in the permitted hours, in violation of Ordinance No. 1706.  ECF No. 57 at 2.  However, Parke was never issued an exclusion order under Ordinance No. 1709.  ECF Nos. 58 at 29; 73 at 11.  Parke currently resides in an apartment in Clarkston.  ECF No. 58 at 29. Parke only requests injunctive and declaratory relief.  ECF Nos. 57 at 4; 58 at 34. Parke wishes to prevent enforcement of Ordinance Nos. 1706 and 1709 and declaratory judgments that state both are unconstitutional as applied to Parke and

violated his rights under the ADA.  ECF Nos. 57 at 4; 36 at 25.

Plaintiff Elves for the Homeless ("Elves") is a nonprofit organization that aims to help the homeless populations in the Lewiston and Clarkston Valley.  ECF Nos. 58 at 34; 73 at 14.  Before they were a group of people pursuing a mission, but they incorporated as a 501(c)(3) non-profit in March of 2022.  ECF No. 58 at 35.  Elves's mission is to "serve the City's unhoused residents."  ECF Nos. 58 at 34; 73 at 34.

Once Ordinance No. 1706 was adopted, Elves's distribution of bus passes and gas money raised because the homeless population became more spread out.  ECF No. 58 at 37.  Elves helped local individuals by offering cooling stations in locations throughout Lewiston-Clarkston Valley.  ECF No. 53 at 38.  Elves provided warming tents in the middle of the day to keep warm.  ECF No. 53 at 36.  After the adoption of the ordinances, Elves increased their hours for the warming tent.  *Id.*  Also, Elves started to visit Foster Park to help people pack up their stuff.  ECF No. 58 at 37.

Similarly to Parke, Elves requests prospective relief including injunctive and declaratory relief.  ECF No. 53 at 42.  One of the reasons for this is to include "a more inclusive response from the City as it pertains to the unhoused population."  ECF No. 53 at 42.  Also, Elves continues that this relief will help them contact individuals pursuant of their mission because the ordinances cause the homeless

individuals to be stigmatized and hide making them difficult to locate.  ECF No. 53 at 42.

## DISCUSSION

Federal Rule of Civil Procedure Rule 56 governing summary judgment provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  A material fact is one that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A material fact is 'genuine'…if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The burden initially rests with the moving party; however, once that burden is met, it shifts to the non-moving party.  *Id.* at 257.

"[S]ummary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'"  *Anderson*, 477 U.S. 242, 251 (1986) (quoting *Sartor v. Arkansas Gas Corp.,* 321 U.S. 620, 624 (1944)).  Additionally, if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" then the moving party is "entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56).

1    The Court "must view the evidence in the light most favorable to the

2    nonmoving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

3    626, 630 (9th Cir. 1987).  In other words, if the moving party provides direct

4    evidence that conflicts with the non-moving party's direct evidence, the court

5    "must assume the truth of the evidence set forth by the nonmoving party with

6    respect to that fact." *T.W. Elec. Serv., Inc.*, 809 F.2d at 631.  Additionally, the

7    Court shall state the reasons for granting or denying the motion on the record.

8    FED. R. CIV. P. 56.

9    Plaintiffs agree to drop claims three, four, and five.  ECF No. 71 at 2.  These

10    claims are deprivation of rights for imposing cruel punishment under the

11    Washington Constitution, article 1 section 14, violation of the U.S. Constitution for

12    deprivation of due process under the Fifth and Fourteenth Amendment and

13    violation of the Washington Constitution, article 1 section 4, for deprivation of due

14    process.  ECF Nos. 27 at 17-18; 36 at 18-19.  The remaining claims include

15    constitutional violations of right to freedom of travel, violation of the Americans

16    with Disabilities Act, violation of the Washington Law Against Discrimination

17    (WLAD), violation of equal protection under the Fourteenth Amendment and the

18    Washington Constitution and declaratory judgment.  ECF Nos. 27 at 16-23; 36 at

19    17-24.

20

1    **SUMMARY JUDGMENT AGAINST JOHN PARKE**

2    Defendant requests the Court to grant summary judgment on all claims

3    against Parke.  ECF No. 57 at 3.

4    **A.  Standing for Prospective Relief**

5    Under Article III of the Constitution, federal courts must only hear cases and

6    controversies.  *United States v. Texas*, 599 U.S. 670, 675 (2023).  A case or

7    controversy exists if the plaintiff has standing.  *United States v. Texas*, 599 U.S.

8    670, 675 (2023).  Essentially, under Article III of the Constitution, to bring a case

9    to federal court, a plaintiff must prove they have standing.  *TransUnion LLC v.*

10    *Ramirez*, 594 U.S. 413, 423 (2021).  Additionally, "at the summary judgment

11    stage, a plaintiff must offer evidence and specific facts demonstrating each

12    element" of Article III standing.  *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053,

13    1058 (9th Cir. 2023) (quoting *Center for Biological Diversity v. Export-Import*

14    *Bank*, 894 F.3d 1005, 1012 (9th Cir. 2018).  A "lack of *Article III* standing requires

15    dismissal for lack of subject matter jurisdiction under Federal Rule of Civil

16    Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

17    To prove standing, "a plaintiff must show (i) that he suffered an injury in fact that

18    is concrete, particularized, and actual or imminent; (ii) that the injury was likely

19    caused by the defendant; and (iii) that the injury would likely be redressed by

20

judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

For the injury prong, a plaintiff "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). For a harm to be concrete, it does not need to be tangible. *TransUnion LLC*, 594 U.S. at 423. However, if the injury is in the future, it must be "*certainly* impending" and not "too speculative." *Clapper*, 568 U.S. at 409.

"For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). In other words, the plaintiff "must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024). Accordingly, "the plaintiff[] must proffer evidence that the defendant['s] 'alleged[] wrongful behavior w[ould] *likely* occur or continue.'" *Murthy*, 603 U.S. at 69 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). However, this likelihood of repetition does not need to be high. *Sterling v. Feek*,

150 F.4th 1235, 1246 (9th Cir. 2025). It can be exemplified by proof of a pattern "of officially sanctioned behavior, violative of the plaintiff['s] federal rights." *Sterling*, 150 F.4th at 1246 (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (2001)).

Additionally, a plaintiff does not need to be the subject of the statute, regulation or government action or inaction for standing to be conferred, however, it does usually make the burden to prove standing "substantially more difficult." *Summers*, 555 U.S. at 493–94 (quoting *Defenders of Wildlife,* 504 U.S. at 562). Nevertheless, a strong opposition against the government action is not enough to have standing. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 987–88 (9th Cir. 2025).

Furthermore, the Supreme Court previously held that an intent to commit an act that would violate a statute or lead to a consequence of injury suffices the injury requirement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014). However, evidence of past wrongs is insufficient on its own to confer standing. *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 967 (9th Cir. 2018). Nevertheless, "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Susan B. Anthony List*, 573 U.S. at 164 (quoting *Steffel v. Thompson,* 415 U.S. 452, 459 (1974)) (internal quotations omitted).

1    To determine whether an injury is similar to a past injury meaning there is a

2    real threat of imminent of harm, the Court must carefully examine the facts and

3    issues to ensure the Court does not limit the analysis too narrowly or technically.

4    *Davidson*, 889 F.3d at 967.  In other words, the issue must be addressed

5    realistically considering the context.  *Id.*

6    Defendant contends Parke does not have standing for prospective relief for

7    his injunctive and declaratory relief request.  ECF No. 57 at 18.  Defendant argues

8    that Parke lacks standing because he is no longer facing homelessness and

9    therefore is no longer imminently facing harm.  ECF No. 57 at 18.  Parke responds

10    prospective relief is appropriate because Parke was cited twice and warned under

11    the ordinances, resides in Clarkston, and faced homeless multiple times.  ECF No.

12    71 at 3.  Parke argues that because of his history of homelessness, he is likely to

13    face homelessness again.  ECF No. 71 at 3-6.

14    Here, Parke's threatened injury is only speculative despite past enforcement.

15    While past enforcement is relevant and may help confer standing, it cannot confer

16    standing alone.  *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 967 (9th Cir.

17    2018).  Now, Parke has a residence and therefore, is unlikely to camp in a non-

18    designated area since he is no longer homeless.  ECF Nos. 58 at 29; 73 at 11.

19    Parke's argument that he may become homeless again is only speculative because

20    it is also possible that Parke may not become homeless, again.  Following, the

ORDER ON DEFENDANT'S SUMMARY JUDGMENT~ 10

enforcement of the ordinance against Parke is not actual and imminent simply because hypothetically Parke could become homeless.  Realistically, Parke could become homeless next week or years from now.  It is only speculative.  Even more, even if Parke faces homelessness again this does not mean he is likely to face enforcement of City's ordinances.  The ordinances provide specific times he is allowed to shelter there as one of the City's designated areas.

A history of homelessness is not enough to support that conclusion to result in an actual and imminent threat of injury.  We saw a similar argument in *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), where Lyons, a citizen of Los Angeles, sued for an injunctive relief alleging the likelihood he will suffer another choking incident purported by a police officer was high.  However, the Court found

> [a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional

*City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citations omitted).  While this case is different, particularly because it focused on whether law enforcement could use certain practices, Parke's case challenges the constitutionality of City's ordinances.  However, the principle emphasizing the need for an actual and imminent threat of injury remains relevant.

ORDER ON DEFENDANT'S SUMMARY JUDGMENT~ 11

1    As a result, Parke has not met his burden to show that he has standing.

2    There is not enough proof that there is likelihood that this will happen again which

3    is required for prospective relief.  Additionally, Parke has not provided any

4    intention to engage in conduct that would result in a violation of the ordinance.

5    *Isaacson v. Mayes*, 84 F.4th 1089, 1098 (9th Cir. 2023) (stating a plaintiff may

6    have standing if the plaintiff can prove an intent to engage in the conduct, that is

7    provided by the statute and that there is a credible threat of enforcement or

8    prosecution).  It only reaches a hypothetical and possible level rather than an actual

9    and imminent level.  Accordingly, Parke does not have standing for prospective

10    relief because his injury is not imminent but only speculative.

11    Furthermore, an injunction or declaratory judgment will not redress anything

12    for Parke.  Parke is not at risk of violating Ordinance No. 1706 or Ordinance No.

13    1709 because he has a stable residence.  Also, an injunction will not redress a

14    speculative injury, and it will not redress his prior violations, either.

15    Parke responds that he has standing under *FDA v. Alliance for Hippocratic*

16    *Medicine*, 602 U.S. 367 (2024).  ECF No. 71 at 3-6.  Parke cites from *Hippocratic*

17    *Medicine*, that when government regulations require or forbid an action by the

18    plaintiff, that this almost always satisfies the injury in fact and causation

19    requirements.  ECF No. 71 at 4; *FDA v. Alliance for Hippocratic Medicine*, 602

20

U.S. 367 (2024).  This statement clearly states that it almost always will satisfy injury and causation but not always.

Parke continues that he is a resident of Clarkston and that confers standing, however, this is not true.  ECF No. 71 at 6.  Similarly to *Lyons*, where any citizen may face the same harm, is not enough to sustain standing.  Residency alone is not enough.  This becomes a generalized grievance argument.  Enforcement or the threat of enforcement of laws or regulations alone does not meet the requirement for standing because it is a generalized grievance.  *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) (stating that officials threatening enforcement of laws does not meet the requirement for an injury in fact); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating a generalized grievance is when a harm is shared by a large group of citizens.  This is not proof of a particularized imminent injury.)

Parke argues that it is unfair if he does not have standing because he is no longer homeless and finally found housing.  ECF No. 71 at 6.  Requiring homelessness to show a likelihood of camping outside of the designated area or any pattern of the same may seem unfair or trivial but it is necessary to show imminent harm beyond a speculative nature.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992)) *(Kennedy, J. concurring in part)* (where requiring the plaintiffs to buy tickets for a flight to an affected project cite seemed trivial to

confer standing, but it was important in the absence of other facts such as proof or evidence of intent of visiting the sites regularly.).

Standing must be met for this Court to have jurisdiction to hear the case. Parke did not prove he had standing for prospective relief beyond speculation. Accordingly, summary judgment is proper, and Parke's claims are dismissed for failure to prove standing.

Regardless, an ordinance stating a designated location for people to camp does not regulate interstate travel. It regulates where people without shelter may legally stay or reside overnight. This is not a restriction on travel within the state. *In re Winton*, 196 Wash. 2d 270, 279 (2020) (discussing an individual's right to travel because the plaintiff required preapproval to enter a city as a limitation of his criminal conviction); *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 262–63 (1974) (discussing an individual's right to travel and durational residence requirements). Also, Parke expresses that this ordinance prohibits homeless people from "sheltering anywhere in the City at any time." ECF No. 71 at 18. However, Ordinance No. 1706 only regulates sheltering at non-designated locations and allows sheltering at Foster Park between reasonable hours. Parke also argues he has the right to not travel. ECF No. 36 at 17. However, the U.S. Supreme Court made it clear that the converse of a protected constitutional right is not itself

1  constitutionally protected.  See *Dobbs v. Jackson Women's Health Organization*,

2  597 U.S. 215 (2022).

3  **SUMMARY JUDGMENT AGAINST ELVES FOR THE HOMELESS**

4  **A.    Standing for Prospective Relief**

5  Defendant states Plaintiff Elves does not have standing for prospective

6  relief.  ECF No. 61 at 5-13.  Defendant continues that Elves cannot prove injury,

7  causation, and redressability.  ECF No. 61 at 5-10.  Plaintiff argues that they have

8  standing under organizational standing.  ECF No. 71 at 7-8.  Plaintiff contends that

9  Elves has standing because the City's actions frustrated the mission and core

10  business activities causing Elves to divert resources.  ECF No. 71 at 6.  Plaintiff

11  agrees that it does not have associational standing but instead argues they have

12  organizational standing.  ECF No. 71 at 6-7.

13  Similar to individuals, organizations have the ability to sue for injuries.

14  *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 987 (9th Cir. 2025).  Every

15  person, entity, or organization must meet the three requirements of standing to sue.

16  Standing requires "a plaintiff must show (i) that he suffered an injury in fact that is

17  concrete, particularized, and actual or imminent; (ii) that the injury was likely

18  caused by the defendant; and (iii) that the injury would likely be redressed by

19  judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting

20  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

To prove the requirement of causation, "[t]he plaintiff must also establish that the plaintiff's injury likely was caused or likely will be caused by the defendant's conduct." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). While cases claiming issues with "[g]overnment regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements" that is not the case where a plaintiff is alleging unlawful regulation of another person. *Hippocratic Med.*, 602 U.S. at 382. Causation "must not be too speculated or too attenuated." *Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-411 (2013)). This means that the "the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Hippocratic Med.,* 602 U.S. at 383.

There are a couple of ways direct organizational standing may be met. One way is if the organization claims that the defendant's actions "affected and interfered with [a plaintiff's] core business activities." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 987 (9th Cir. 2025) (quoting *Hippocratic Med.*, 602 U.S. at 395). The other way includes if the organization alleges that the defendant's actions "frustrated its mission and caused it to divert resources in response to that frustration of purpose." *Immigrant Defs. L. Ctr.* 145 F.4th at 987–88 (quoting *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021)). For

1  example, an organization plaintiff can prove this by showing the defendant's

2  actions caused the "consequent drain on the organization's resources—[that]

3  constitute[d] far more than simply a setback to the organization's abstract social

4  interests." *Immigrant Defs. L. Ctr.*, 145 F.4th at 987 (quoting *Havens Realty Corp*

5  *v. Coleman*, 455 U.S. 363, 379 (1982)).

6      Elves alleges both harms.  ECF No. 71 at 6.  Elves contends that the City's

7  adoption of Ordinance No. 1706 caused Elves's core business activities to be

8  interfered with and affected.  ECF No. 71 at 9.  Elves furthers that Ordinance No.

9  1706 displaced the homeless community making it difficult to achieve their core

10  purpose.  ECF No. 71 at 9.  Elves furthers that this disproportionally impacted

11  homeless people with disabilities violating the ADA and WLAD.  ECF No. 36 at

12  19-23.  Elves's core purpose is to "serve the City's unhoused residents."  ECF Nos.

13  58 at 34; 73 at 14.

14      Elves's claims that they started to visit Foster Park to help people pack up

15  their stuff.  ECF No. 58 at 37.  Elves state Ordinance No. 1706 caused their

16  outreach efforts to be affected due to the displacement and instability of the

17  homeless population.  ECF No. 71 at 9.  Additionally, their efforts to help

18  individuals achieve long-term goals were diverted to relocating individuals and

19  clearing camps to avoid violations.  ECF No. 71 at 9.

20      Elves do not allege enough facts for organizational standing that Elves

1    mission was frustrated, and that they diverted their resources because they only

2    stated an increase in issued bus passes and transportation costs and increase of

3    operation of a warming tent.  ECF No. 58 at 36-37.  This is something they already

4    provided, and it did not rise to a level of a "drain on the organization's resources—

5    [that] constitute[d] far more than simply a setback to the organization's abstract

6    social interests." *Immigrant Defs. L. Ctr.*, 145 F.4th at 987 (quoting *Havens Realty*

7    *Corp v. Coleman*, 455 U.S. 363, 379 (1982)).

8    　　　Elves provides facts that support standing because the ordinances interfered

9    with their core business operations.  Elves showed how their activities shifted to

10    address the displacement of the homeless population because of the enforcement of

11    City's ordinances.  For example, started to focus on preventing the homeless

12    population from enforcement rather than providing other aid.  ECF No. 71 at 9.

13    The ordinances are still enacted showing imminent harm of the same.

14    　　　However, Elves intertwines this argument about the homeless population

15    with their argument about the disabled homeless population which their claims rest

16    upon.  *Iten v. Los Angeles*, 81 F.4th 979, 985 (9th Cir. 2023) (stating while

17    standing does not focus on the merits of the case, "it often turns on the nature and

18    source of the claim asserted.") (quoting *Warth v. Seldin*, 422 U.S. 490, 500,

19    (1975)).  Elves suggests that the harm to the homeless population also proves harm

20

ORDER ON DEFENDANT'S SUMMARY JUDGMENT~ 18

to the homeless disabled community.  ECF No. 36 at 19-23.  The leads to issues of at least two elements of standing.

Elves claim that the ordinances caused violations under these acts which harmed the organization because the disabled community was disproportionately harmed leading to a shift in their operations.  ECF No. 36 at 19-23.  However, Elves does not allege facts showing how City's ordinances caused the displacement or the disparate impact of disabled individuals and that harmed the organization under theories of organizational standing.  ECF No. 71 at 6-12.  Elves only infers or assumes an injury because the homeless population displacement led to the organization's shift of core activities.  *Id.*  Essentially, Elves alleged facts of the harm to the organization and homeless disabled population are too attenuated. Elves do not show facts to exemplify the ordinances' effect on the organization to help the homeless disabled community.  An injunction and declaratory judgment would not remedy this because there is no clear indication of an imminent or ongoing harm or that these ordinances caused the alleged harm at all.

On that note, the prospective relief requested will not redress this alleged issue.  The ordinance addresses people who camp at Foster Park outside of the designated hours or outside of Foster Park.  It does not address the disabled community, and there is no evidence demonstrating that the community was, or continues to be, impacted.  Therefore, it is unclear how the City's ordinances

caused harm to the organization's core activities because of alleged violations under the ADA and WLAD for disparate impact.

For example, in multiple cases where organizational standing was alleged, we see a connection between the organization's purpose, the alleged harm, and the government regulation.  In *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*, 959 F.2d 742 (9th Cir. 1991), the organization's purpose was to help refugee's obtain immigration relief.  However, the adoption of a government policy forced them to spend resources in representing their clients rather than spend it on other ways because the policy allowed use of "incompetent translators" and an absence of interpreted portions of the court hearings.  *El Rescate Legal Services, Inc.*, 959 F.2d at 745.  The organization's activities interference and the frustration of the organization's purpose was directly related to the implementation of the government policy and the consequential harm to the members of the class action to "to present evidence, to cross-examine witnesses, and to be represented and effectively assisted by retained counsel." *El Rescate Legal Servs., Inc.* 959 F.2d at 745.

In *People for the Ethical Treatment of Animals v. United States Department of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015), an organization's purpose was to pursue humane treatment of birds.  However, the Court found an organization's purpose was frustrated because the USDA did not apply protections for birds under

the Animal Welfare Act. *People for the Ethical Treatment of Animals v. United States Department of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015). Again, the organization's purpose clearly relates to the alleged injury which was caused by the Animal Welfare Act.

These cases exemplify that the organization's purpose and business activities, the alleged injury, and the unlawful regulation must be connected and not too attenuated for the causation element of standing. Elves alleges a harm that is speculative and a distant cause at best, even if it is predictable, which would not be redressed with prospective relief. *Hippocratic Med.,* 602 U.S. at 383.

Furthermore, Elves claims that these ordinances caused the Elves to distribute more money because of the dispersed population. ECF No. 58 at 37. As discussed, the same arguments are applicable. In addition, a raise in money distribution for the same activities does not divert Elves's funds nor did it frustrate their core purpose. Elves did not allege a drain of funds rather than simply stating they required more funds in response.

### B.    Summary Judgment

Even more, Elves misses important elements of their claims warranting summary judgment. Discrimination under the ADA and WLAD includes a claim for disparate treatment of a qualified disabled individual. 42 U.S.C. § 12112; RCW 49.60.180. Under Title II of the ADA, a qualified individual with a

disability is "a person who is eligible *to receive services* or *to participate in a publicly provided program or activity." Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1176–77 (9th Cir. 1999). The elements required to allege "a violation of Title II, Plaintiffs must show that (1) they are 'qualified individual[s] with disabilit[ies]'; (2) they were 'either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or w[ere] otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of [their] disabilit[ies].' *Where Do We Go Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 860 (9th Cir. 2022) (quoting *Payan v, L.A. Cmty. Coll. Dist.*, 11 F.4th at 737 (9th Cir. 2011). Under the ADA, a disparate impact treatment occurs when practices "that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quoting *Teamsters v. United States*, 431 U.S. 324, 335-336 n.14 (1977)). The WLAD looks to the federal statutes for interpretation and the similarity in the statutes, they are analyzed together unless they differ. *Poe v. Waste Connections US Inc.*, 371 F. Supp. 3d 901, 909 (W.D. Wash. 2019).

Elves alleges violations under the ADA for disparate impact and under the WLAD for discrimination. ECF No. 36 at 19-23. Elves agrees that the WLAD

and ADA claim does not differ "in any material respect" under *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001).  ECF Nos. 71 at 38; 86 at 9.

Elves cannot prove that disparate impact exists because Elves did not prove that the disabled community were affected by the ordinances.  ECF No. 71 at 33. Elves relies on many assumptions and broad generalizations of the disabled population to show that the disabled population is affected.  *Id.*  Elves seems to conflate their facts about the homeless populate with facts about the homeless disabled population.  However, Elves does not provide specific facts about the people of the disabled community and how they were disparately impacted by the City's ordinances beyond generalizations.  *Id.*  In other words, they did not show any examples or proof that this violation is ongoing.  Additionally, Elves does not allege facts that support qualified individuals were denied any benefit or program or that it was because of their disability.  Data about the general homeless disabled population and population estimates do not show facts sufficient for these elements.  In short, Elves do not provide specific facts beyond estimates provided by an excluded witness that a violation under these acts occurred or continues to occur because of the ordinance's enactment.  Therefore, summary judgment is proper and Elves's claims are dismissed.

//

//

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment against Plaintiff John Parke (ECF No. 57) is **GRANTED.**

2. Plaintiff John Parke's claims against Defendant are **DISMISSED** with prejudice.

3. Defendant's Motion for Summary Judgment against Plaintiff Elves for the Homeless (ECF No. 61) is **GRANTED IN PART.**

4. Plaintiffs' Cross Summary Judgment (ECF No. 71) is **DENIED IN PART.**

5. Plaintiff Elves for the Homeless claims against Defendant are **DISMISSED** with prejudice**.**

6. Defendant's Motion to Amend the Scheduling Order (ECF No. 97) is **DENIED as moot.**

7. All remaining motions are **DENIED as moot** and the deadlines, hearings and trial date are **VACATED.**

1    The District Court Executive is directed to enter this Order, enter judgment

2  in favor of the Defendant, furnish copies to counsel, and close the file.  Each party

3  to bear its own costs and expenses.

4    DATED November 13, 2025.



THOMAS O. RICE
United States District Judge